# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 88 | **DATE** | 1/15/2002 |
| **CASE TITLE** | Walton vs. United States of America | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying the petitioner's motion under 28 U.S.C. Section 2255 motion. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 4 5 | Document Number |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JAN 16 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | CM | 23 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT | 1/15/02 | |
| | | | | date mailed notice | |
| MPJ | courtroom deputy's initials | 02 JAN 15 PM 5:08 | | MP | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDDIE WALTON,                        )
          Petitioner,       )
                                     )
    v.                               )
                                     ) No. 01 C 88
UNITED STATES OF AMERICA,            )
                                     )
          Respondent.       )
                                     )

## MEMORANDUM OPINION AND ORDER

Eddie Walton pleaded guilty pursuant to a plea agreement on September 7, 1999, to a narcotics conspiracy under 21 U.S.C. §§ 841 and 846. He was sentenced to 210 months imprisonment and five years supervised release. Mr. Walton did not directly appeal his conviction or sentence; instead he filed this pro se motion under 28 U.S.C. § 2255, stating fourteen grounds for vacating his conviction or reducing his sentence, all of which involve an allegation that the laws under which he was convicted do not exist and are not enforceable. I allowed him to amend his petition to add a claim for a reduction of his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The government has responded to the merits of Mr. Walton's claims.

I.

As part of the plea agreement, Mr. Walton waived his right to appeal or collaterally attack his sentence, except for claims of involuntariness or ineffective assistance of counsel. Gov't Ex. B

¶ 12. In general, express waivers of appeal and collateral attack are enforceable, except with regard to the discrete questions of voluntariness and ineffective assistance of counsel *as to the plea*. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Mr. Walton challenges ¶ 12 as a denial of his right to appeal (ground 13) and charges that his counsel was constitutionally ineffective (ground 14).

Mr. Walton's petition falls short of demonstrating either that his waiver of appeal rights under the agreement was involuntary or the product of ineffective assistance of counsel. "The validity of an appeal waiver rests on whether it is 'express and unambiguous' and whether the record clearly demonstrates that it was made 'knowingly and voluntarily.'" *Id.* at 1144. Paragraph 12 of the agreement expressly waived the right to bring a § 2255 motion challenging his sentence or the manner in which it was imposed. During the plea colloquy, Mr. Walton stated that he understood that he was waiving the right to appeal his conviction. Gov't Ex. C at 12-13. He also said that he read the waiver, talked to his lawyer about it, and understood it. *Id.* at 16-17. Mr. Walton told Judge Marovich that pleading guilty was a voluntary decision. *Id.* at 19. Under the totality of the circumstances, the plea colloquy demonstrates that Mr. Walton's plea was voluntary. He now suggests that his plea was involuntary because he never would have pleaded to a law that did not exist, but, as I discuss below, the laws

2

under which he was convicted do exist and are enforceable.

To demonstrate that his plea was the result of ineffective assistance of counsel, Mr. Walton "must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *United States v. Martinez*, 169 F.3d 1049, 1052-53 (7th Cir. 1999). Here Mr. Walton claims that his counsel was deficient because he failed to discover that the laws under which he was convicted were unenforceable. However, 21 U.S.C. §§ 841 and 846 *are* enforceable, so there was no deficiency there. He also alleges that "the actual lab test should not have been allowed in as evidence for reasons previously stated herein, but also because [it] did not indicate the presen[ce] of Sodium Bicarbonate." Sodium bicarbonate is commonly known as baking soda, *Webster's II New Riverside University Dictionary* 1104 (1994), and although he does not explain this argument at all, I presume that he is challenging the accuracy of the government's assessment of how much of the mixture was cocaine as opposed to baking soda. But even assuming that the lab test was inaccurate and that it was objectively unreasonable of his counsel not to raise this issue, he does not explain how he was prejudiced. For example, he does not offer an alternative calculation of the amount of cocaine base involved, or explain how it would have affected his sentence or his decision to plead guilty. "[P]ro se submissions are to be liberally construed," *Blake*

3

*v. United States*, 841 F.2d 203, 205 (7th Cir. 1988) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)), but even a pro se petitioner can waive a claim by failing to support it with legal argument or authority, *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998). Because Mr. Walton cannot demonstrate that his waiver of the right to collaterally attack his sentence was involuntary or the product of ineffective assistance of counsel, his entire motion is barred.

## II.

Even if Mr. Walton were entitled to bring a § 2255 motion, all of his remaining claims fail on their merits. Each of Mr. Walton's fourteen grounds for relief in his original petition is based on the argument that his conviction is unconstitutional because it is based on statutes that do not actually exist. As I understand Mr. Walton, he argues that the United States District Courts lack jurisdiction over him because §§ 841 and 846 were never properly enacted or published. The question of publication is easily disposed of. Publication of a law in the United States Code is prima facie evidence that it is the law of the United States. 1 U.S.C. § 204(a). Both sections were published in the United States Code Annotated in 1998, the year in which Mr. Walton committed the offenses of which he was convicted. He also argues that §§ 841 and 846 were never published in the "Statutes at Large"; in fact, the original Comprehensive Drug Abuse Prevention and Control Act of

1970 was published at 84 Stat. 1236, the 1984 amendments were published at 98 Stat. 1837, the 1986 amendments were published at 100 Stat. 3207. *United States v. Allen*, 733 F. Supp. 1186, 1187 (N.D. Ill. 1990) (giving legislative history of § 841).

Mr. Walton also argues that the statutes are invalid because they were not published in the Federal Register, but he has not demonstrated that they were required to be. The Federal Register Act, 44 U.S.C. § 1501 *et seq.*, requires publication of certain executive "documents" in the Federal Register, § 1505, but it specifically excludes acts of Congress from the definition of "document," § 1501. *See also* 1 C.F.R. §§ 1.1, 5.2. Even if there were a violation of the Federal Register Act or any other publication requirement, however, that would not render the laws invalid, because the Constitution provides that a law is effective when, after passed by both houses of Congress, it is either signed by the President or not returned to Congress within ten days of presentment to the President. Art. I § 7. Mr. Walton has not demonstrated that these procedures were lacking with regard to §§ 841 and 846.

Mr. Walton's other argument appears to be that, even if published, the laws are invalid. He includes in his supplemental legal authority a discussion of the Treaty of 1794, commonly known as "Jay's Treaty." Jay's Treaty pledged that the United States would fund any British debts obstructed by state legislation or

state judicial action. *See* Ruth Wedgewood, *The Revolutionary Martyrdom of Jonathan Robbins*, 100 Yale L.J. 229, 263 (1990). It was tremendously unpopular, and after it was ratified by the Senate, opponents sought relief in the House of Representatives. *Id.* at 262. Although the House had no role in ratifying the treaty under Art. II § 2, Cl. 2 of the Constitution, the House's duty to appropriate funds under the treaty raised questions of the House's role in foreign policy. *Id.* at 263. The conflict arising out of Jay's Treaty symbolized "the repudiation of popular authority in foreign policy." *Id.*

It is not clear how this foreign relations crisis would apply to Mr. Walton's claim that the drug laws are invalid, but he appears to argue that the federal statutes are private codes that, like the Senate's ratification of Jay's Treaty, are the product of a conspiracy of British freemasons in Congress. There is no authority for the proposition that membership in any organization or secret society has any effect on Congress' authority to pass laws. Sections 841 and 846 are validly enacted and promulgated laws, and they establish jurisdiction in this case.

### III.

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), holds that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond reasonable doubt. *Id.* at 490. Mr.

Walton argues that *Apprendi* is available retroactively on collateral review, that it renders §§ 841 and 846 unconstitutional, and that his plea was unconstitutional as a result. However, the lowest statutory maximum for a violation of § 841(a) involving cocaine, a Schedule II narcotic, is 20 years, 21 U.S.C. §§ 812(c), 841(b)(1)(C); *United States v. Williams*, 238 F.3d 871, 877 (7th Cir. 2001), and Mr. Walton was sentenced to 210 months, or seventeen and a half years, which is less than the lowest possible statutory maximum, so *Apprendi* does not even apply to his case. *Williams*, 238 F.3d at 877 ("[W]hen a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, '*Apprendi* is beside the point.'"). Because *Apprendi* does not apply at all, I need not decide whether it applies retroactively in a § 2255 motion. His motion is DENIED.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 15, 2002